## VALIDITY OF ANTE-NUPTIAL CONTRACT.

Common Pleas Court of Huron County.

MINNIE WARNER METTLER ET AL V. ISABELLA R. WARNER ET AL.

Decided, July 11, 1910.

*Comity—As Between Courts of Different States—Illinois Judgment Declaring Ante-nuptial Contract Void Held to be Conclusive in Ohio —Circumstances under which Fraud in the Making of such a Contract may be Predicated.—Effect of Foreign Judgment of Land Titles.*

1. The decision of a court of another state is conclusive on the courts of this state, in which land involved in the controversy is situated, when the title to the land is only indirectly or incidentally involved in the case determined in the foreign court; and the determination of an Illinois court as to the validity of an ante-nuptial contract in which the right to dower in Ohio real estate is involved is, therefore, conclusive when pleaded in an action here for the assignment of dower, and the same question between the same parties can not be relitigated here.
2. Where a man worth as much as $131,000 executed an ante-nuptial contract with a girl without means or business experience, or knowledge of the value of his property, by the terms of which she is to receive an annuity of $500 and $10,000 at his death, the disproportion between the amount stipulated in the contract and the amount which she would receive under the law as his widow is so great as to stamp the contract as a fraud upon her, and does not bar her right to dower in his real estate as his widow.

*B. B. Wickham, L. W. Wickham,* for Isabella R. Warner.
*A. V. Andrews,* for Vespasian Warner.

RICHARDS, J.

This case has been submitted to the court to determine the issues in so far as they are involved in the pleadings filed by the defendant, Isabella R. Warner, and the defendant, Vespasian Warner, raising the question of the validity of a certain ante-nuptial contract. The issue is as to the validity of this ante-nuptial contract, and the right of the defendant, Isabella R. Warner, to dower in certain real estate situated in Huron county.

Upon the matter submitted, there are two questions raised, first, as to the conclusiveness of the judgment rendered by the courts of Illinois and affirmed by the Supreme Court of that state, *Warner* v. *Warner*, 235 Ill., 448; and second, if that judgment shall not be found to be conclusive upon the rights of the parties now submitted to the court in this case, then, as to whether, on the evidence submitted, the ante-nuptial contract is or not a valid writing.

John Warner, at the age of fifty-four, was married to Isabella Robinson, who was of the age, at that time, of twenty-four. This marriage took place in the year 1874. He was a resident of Clinton,. Illinois, and she was a resident of Huron county and had never been in the county where he lived. Her acquaintance with him had been brief. He was a man worth, on the evidence submitted, $131,000 at that time, about one-third of which was personal property and two-thirds of which was real estate. He owned no property in Huron county, but owned real estate in various states other than Ohio.

The day before their marriage, they executed in this county an ante-nuptial contract which provided in substance that he should pay to her annually during their married life the sum of $500, and at his death she should receive the sum of $10,000 from his estate, and that was to be in lieu of all claims which she might have upon his estate.

At his death, which occurred in December, 1905, he was worth in the neighborhood of $2,000,000. He had two children by a former wife who were, at the time of his marriage to his second wife, grown up, and who are still surviving him. By his second wife, he had two children who are survivors, and these two

children are the plaintiffs in this case and are seeking partition of the real estate located in this county.

Isabella R. Warner was the owner, and is now the owner, of an undivided half of this real estate in her own right, and the plaintiffs claim to be owners of an undivided interest in that real estate, claiming that certain provisions of the will of John Warner are invalid. Those questions, however, as to the validity or invalidity of that will, are not now before the court to be determined.

By way of cross-petition, Isabella R. Warner sets up a claim to a dower interest in the undivided half of this Huron county land owned by her husband at his death; and Vespasian Warner, in his answer as executor of the estate of his father, sets up the ante-nuptial contract, and claims that by the terms of that contract she is barred from any right of dower in this property.

That identical question was litigated in the courts of Illinois in an action in which every person that is now party to this case was a party.

It is urged, however, that the subject-matter of that litigation was the real estate in Illinois, and that so far as the real estate in Ohio is concerned, the judgment of the Illinois courts would not be conclusive as to the rights of the parties in the Ohio land.

There have been a great multitude of cases determined by the courts along these lines. The constitutional provision requiring that "Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state," is claimed to be involved. Article IV, Section 1, United States Constitution.

On the other hand, the principle of law is urged that the courts of each state are the sole judges as to the passing of title to real estate within the boundaries of that state.

Now not all the cases upon that question can be reconciled, but it seems to me that the criterion by which many of these cases are to be reconciled, and the rule of law applicable to determine them, is, that if the title to real estate is directly involved, then the courts in a foreign jurisdiction have no authority to determine that question; but if the title is only indirectly in-

volved, or incidentally involved, then the decision of the courts of foreign states is conclusive upon the rights of the parties.

The true rule and the one which it seems to me is applicable, is laid down in 23 Cyc, 1548, in the following language:

"Real estate, being governed only by the law of its *situs*, and

being subject only to the jurisdiction of the courts of the state where it is situated, can not be directly affected by the judgment or decree of a court of any other state; nor do the provisions of the federal Constitution and the act of Congress require that a judgment of a state court should be accorded any extra-territorial force or effect as regards real estate. But although incapable of acting directly on real estate beyond its jurisdiction, a court of equity in one state, having acquired jurisdiction of the litigants, may make orders and decrees affecting their dealing with such property, in such manner as to bind them personally, and such orders or decrees may be pleaded as a cause of action, a bar, or a defense in the state where the land lies."

Numerous cases are cited to sustain this proposition and among them is the leading case in Ohio, *Burnley* v. *Stevenson*, 24 Ohio St., 474. .

Another reference may be found in 11 Cyc, 681, in which the extra-territorial effect of judgments is discussed and in which the following language is used:

"The nature of the action or character of the remedy sought is also important. Thus in cases of fraud, trust, or contract the jurisdiction of equity is sustainable wherever the person can be found, although lands without the limits of the court's authority may be affected by the decree. If, however, the suit relates to a mere question of title it must be tried in the district where the land lies."

Now, it is argued in the case at bar that the question determined in the courts of Illinois did relate to the matter of title, but it appears to this court that the subject-matter of that action was the validiy or invalidity of the ante-nuptial contract.

True, that contract being held by the courts of Illinois to be void by reason of fraud, it resulted that Isabella R. Warner would be entitled to dower in the property, and thus indirectly, an interest in the land, or a title to the land would be affected,

but that was not directly the matter then and there adjudicated.

I think that the courts of Illinois had full and ample juris-diction over the question of the validity of the ante-nuptial con-tract, and it seems to me that the conclusions of the courts of Illinois upon that question are conclusive upon this court.

I call attention to *Lynde* v. *Railway*, 57 Fed. Rep., 993, 996, holding in substance that although a decree may incidentally affect lands out of the state, nevertheless, if it does not directly so affect them, the decree is binding upon the courts of the state where the realty is situated.

An elaborate note may be found in which many cases upon this question are collated in *Tremblay* v. *Insurance Co.*, 97 Me., 547. An Ohio case which has been cited, goes, it may be said, to the limits upon this question. It goes perhaps farther than most decisions in other states, the case of *Burnley* v. *Stevenson, supra,* to which I have already referred.

In that case there had been a determination in the courts of Kentucky as to the rights in certain real estate situated in Ohio, and that decision was pleaded as a bar in the courts of Ohio. The determination in the courts of Kentucky was as to the right to specific performance of a contract for a conveyance of the undivided two-thirds of 606 acres of land in this state. It was held in this state and in that case that the decision was conclu-sive upon the courts of this state.

In the course of the opinion, McIlvaine, Judge, speaking for the court, uses this language, as to the subject-matter of the ac-tion in the Kentucky courts:

"The subject-matter of the bill on which the decree was ren-dered, was the enforcement of a trust and the specific perform-ance of a contract to convey lands situate in the state of Ohio."

It seems to me that, following the case of *Burnley* v. *Steven-son, supra,* this court can do no less than to hold that the de-cisions of the Illinois courts affirmed by the Supreme Court of that state and found in *Warner* v. *Warner*, 235 Ill., 448, is con-clusive upon the parties in this case.

Aside from the question of conclusiveness of the Illinois judg-ment, this court, upon the evidence which has been submitted,

consisting of many hundreds of pages of printed record used in the courts in Illinois, would be compelled to reach the same conclusion, so far as the ante-nuptial contract is concerned, that was reached by the courts of Illinois.

The only knowledge that this girl had as to the property of John Warner at the time of her marriage was the general statement, or general rumor that he was a banker, that he was rich, that he owned real estate and that he contemplated spending his winters, or some of them, in the south. In substance, without undertaking to elaborate upon the evidence, which is very voluminous, that was the extent of her information, and with that information, and no other, she entered into this contract by which the amount of property which she was to receive would be vastly less than it would have been in the absence of a contract.

There were existing confidential relations between these parties at that time. This may be assumed from the fact that the contract was made the day before they were married; but in this case, it is not necessary to assume it, for the voluminous correspondence contained in this printed record is ample evidence to the court of the existence of that relation.

For the reasons briefly indicated then, this court must determine that this ante-nuptial contract is invalid by reason of the fact that the amount provided for her is grossly disproportionate to the amount of property which he had, and the knowledge or lack of knowledge on her part was such that it amounted in law to a fraud on her.

The entry then will be, a finding for the defendant, Isabella R. Warner, as to this ante-nuptial contract, and adjudging her a right of dower.